And we'll move to the second case this morning, United States v. Joiner. I see Mr. Jacobs and Mr. Melissa. All right, can you hear me? Yes, Your Honor. All right, Mr. Melissa, you may proceed. Thank you, Your Honor, and may it please the Court, Mr. Jacobs. This case presents the simple question of whether or not the District Court exercised its discretion on Mr. Joiner's 3582c1a motion within the bounds of due process. Specifically, whether or not the District Court answered all of Mr. Joiner's arguments in favor of sentence modification. The government agrees that the District Court did not answer his argument that as a Black American, he faces a 280% or so increase in risk of death from COVID-19 and about 370% increased risk of hospitalization. Mr. Melissa, could you hear the argument in the last case? I did not, Your Honor. In the last case, the defendant was arguing that it is absolutely constitutionally forbidden for a district judge even to think about race when imposing a sentence. You're arguing that it's absolutely constitutionally required for a district judge to think about race when deciding how long somebody spends in prison. It does seem to me that both of these propositions can't be true at once. Your Honor, I think in this case, that's an argument that I feel the District Court might have said. I'm saying that it's required for the District Court to comment on it, to make the argument. Now, if that is the District Court's position or if it had been the government's position, as I said in my brief, this would have been a much different appeal, if any. I would note, however, that at least two other District Courts have considered this issue. Well, if counsel in the previous case is right, those other courts have violated the Constitution. It doesn't mean we should require a consideration of race as opposed to requiring race neutrality to the best extent we can. Let me, instead of asking you questions about an argument you didn't hear, let me ask you an empirical question. Are there any data about the mortality rate of COVID-19 in prison by race? Your Honor, I don't have that specific data, and I didn't cite that to the District Court. Do you know whether there are such data? The reason I ask this is that the difference in mortality by race outside of prison is pretty well established empirically. What's not well established is why. There could be something genetically linked to race, or it could be linked to average income, or it could be linked to family size, which has to do with the ease of transmission, or it could be linked to the quality of medical care. In prison, many of those things are held equal. In prison, everybody gets the same medical care, whether good or bad. In prison, everybody has the same amount of space, usually small, and so on. Unless there are studies about incidents in prison, how could one be confident that a don't matter anymore when one is in prison? Yes, Your Honor. These are arguments I think the District Court could have made or questions— No, no. Look, look, counsel. I didn't. You—it's all very nice to say, well, the burden is on the district judge. I'm asking what the record shows about these questions, and the answer may be nothing, or maybe what the literature shows about these questions, and it may be nothing. And then you can play lawyer's games about saying somebody else has the burden, but first we need to know just what there is for us to know. Well, the record shows at the time, Your Honor, that COVID-19 was only a few months old, and that the research at that time—remember, this was filed last July—that the research showed that there was a difference in outcomes based on race, and for that reason— Fine, but there's a lot of empirical research since then, and, of course, one can cite and ask a court to take judicial notice of peer-reviewed, published scientific research, right? We're now another seven months on. I'm asking if there's anything there. Your Honor, I don't know of any research that— Okay, well, it may not be your fault. There may be nothing there, but it would help to know if there were. Yeah, and if I see it, Your Honor, I will move to supplement the record. Thank you. I look at this case similar to the Cunningham case, where that was a sentencing hearing, and we're not asking for a plenary resentencing, but this court held that the district court can't just say, hey, we credit everything the government says, without at least commenting on what the defendant says. I also look at the Villegas-Miranda case, which I also cited in my briefs, where the court says, if another tribunal has given credit to the defendant's argument, and if the Seventh Circuit has not foreclosed that argument, a defendant can at least expect a judge to comment on that argument. And that's the situation we're in here. Other courts have credited this argument, and this court has not yet foreclosed that argument. So we are asking that the court at least make a comment on it. As I noted in one of the 28J letters, Judge Myerscough subsequently has commented on this argument and said, look, I don't know why, but the cold statistics show there's a difference in outcomes, and I'm considering that. So it's not clear why the court didn't comment on this argument, just that this court does not have a record to evaluate how the district court exercised its discretion. I see that I'm getting down to the bottom of my time, and I'd like to reserve the rest for rebuttal. That's fine. Thank you.  Thank you, Your Honor. May it please the court. This case, as it was stated in defendant's brief right at the beginning, is specifically a procedural argument. It has nothing to do ultimately with the facts of the case, other than what was presented to the court at that time, and whether or not the determination by the court to not address the race-based argument made by the defendant was procedural. That's what we're dealing with. We're not dealing with the underlying whether or not he should have been granted compassionate release, or whether or not that race-based argument would have held water somewhere else. What we're dealing with is that this defendant filed a compassionate release. That compassionate release specifically cited, to Judge Easterbrook's question, studies that said that disease is biological. It is not biological, but it is based on socio and economic standards. Actually, the studies available last summer, and the studies available now, don't pin down reasons. The mortality rate is linked to race and ethnicity. It's also linked to where you live. It's linked to family size. And it's linked to the quality of medical care. And teasing out these different contributions has proved very difficult. Now, have you found any literature addressing this question for what, if any, the relation is in prison? No, Your Honor. And I don't, and that's actually a big point of all of this, is that there was nothing cited to the court at the time to believe that the argument that defense counsel and the defendant made held any water. Well, look, our task is to figure out now whether it would be sensible to remand to the district court for more proceedings. If there were such clear evidence now, that might make it appropriate to remand. The alternative, of course, is to tell Mr. Joyner, well, file another one and start from scratch. But if, in fact, we have no better information now than we did last summer, it's harder to imagine remanding.  So, we do have a number of studies that have been done specific to the individuals within prison. As Your Honor mentioned in the question to defense counsel, there have been a multitude of studies outside of prison, based upon the racial aspects of COVID-19, and whether or not those specifically are related to the biology of the individual, or as you mentioned, where they live, the family structure, the shared housing, and all of those things. But as Your Honor specifically pointed out, those are the same in prison. But again, those arguments were not available, or a study linking anything to prison and race were not available to the court, and were not provided to the court at the time. Again, this is a purely procedural question of whether or not the court should have simply acknowledged or stated a reasoning based upon race in their determination that he should not have been given compassionate release. When we look at that, the evidence actually that was provided by defense counsel negates his argument. He's claiming that because his race outside of prison would place him at a higher level potentially of risk, that in prison it does too, except that he then cites to two different things that say the impact of the disease or diseases in general is not biological, but is socio and economic. In other words, the judge could basically look at his argument and say, you say that it's based on race, you acknowledge that it's not, and then you cite that it's not. It's so weak at that point that it simply does not merit consideration, which is the standard that this court has to decide for the purposes of this case, of whether or not the court should have taken that argument, should have looked at it, and should have made the determination based upon what was in front of it. Because there was nothing in front of the court at that time to state that there was any merit to that case, there is no reason that the court violated any type of procedural due process. In looking at the cases that defense counsel cited in their additional authority, those courts, while mentioning race, actually look at two different factors, those being the individualized factors of that individual who was making the compassionate release. In Smith, it has to do with smoking and hypertension. In Lewis, it has to do with the fact to be a sickle cell trait and the fact that there should have been a prior filing to reduce his sentencing. The courts in both of those cases took those into account, having mentioned race, but that was it. Again, Your Honors, because there's nothing in the record to suggest that there should have been some other annotation for the court to make, there's nothing that procedurally, which is the question here, that the court did improperly. If Your Honors have no further questions at this time, Your Honors, I would ask that the district court be affirmed. Thank you. Thank you. Mr. Melisa. Thank you. The government makes its merits argument, which I disagree with, and which I would say, as I said in the brief, willfully fails to connect the dots. But this is an argument that should have been made in the district court. The government did not make that argument. And they're trying to rely on an abuse of discretion standard here when it's not clear that any discretion was exercised. It's not clear that the court considered this question. And getting to Judge Easterbrook's question about whether there are studies or not, that is what district courts are set up to evaluate. If the district judge says, hey, I'm questioning whether or not your statistics from outside the jail translate to inside the jail. We're going to have a hearing on it. Present your arguments. Present your experts and your peer-reviewed studies if there aren't. That's the appropriate place for that. And what I'm saying is rather than me presenting a bunch of studies to this court in the first instance, the district court should have given this court a record to review to assess whether or not the district court had sufficiently utilized its discretion. And the district court is well-placed to make that analysis of the experts, of the presentation of evidence. It's just not a good forum here and it's not set up to do it. In terms of whether or not the actual studies support my argument, that obviously gets the merits that were not contested by the government below. The question is actually answered by the CDC's website, which was included in the record below, which says, hey, there is a correlation between over-representation of certain ethnic groups within the jails and COVID-19 complications. That's just in black and white was actually emphasized in the CDC documentation that was printed out and handed to the district court. It simply wasn't answered by the district court. Again, subsequent to this hearing, this very district judge in front of these same two attorneys actually credited that argument at a sentencing hearing. All we're saying is that we would like the district court to answer all of our questions, all of the arguments made in favor of sentence modification, yes or no, so that both we could evaluate whether or not there's something to appeal and whether this court could evaluate whether any such appeal would have merit. Unless the court has any questions, I have nothing further to add. All right, thank you very much. Our thanks to both counsel. The case is taken under advice.